Brian Segee (State Bar No. 200795)
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, California 93101
Tel: (805) 963-1622
Fax: (805) 962-3152
Email:   bsegee@EnvironmentalDefenseCenter.org

Michael Lozeau (State Bar No. 142893)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA  94607
Tel: (510) 836-4200
Fax: (510) 836-4205
Email: michael@lozeaudrury.com

Attorneys for Plaintiff

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER,<br><br>    Plaintiff,<br><br>vs.<br><br>VINTAGE PRODUCTION CALIFORNIA LLC, a corporation<br><br>    Defendant. | Civil Case No. 12-04030 FMO (SSx)<br><br>**CONSENT DECREE** |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VINTAGE PRODUCTION CALIFORNIA LLC, a corporation,<br><br>　　　　Defendant. | Civil Case No. 12-04030 FMO (SSx)<br><br>**STIPULATION AND CONSENT DECREE** |

## I.  STIPULATION

　　This Stipulation is entered into by and between Plaintiff, the Environmental Defense Center ("EDC"), and Defendant, Vintage Production California LLC ("Vintage") (hereinafter collectively referred to as the "Parties").

　　On February 23, 2012, EDC served Vintage, Vintage's registered agent, the Administrator of the Environmental Protection Agency ("EPA") Region IX, the Executive Director of the California State Water Resources Control Board ("State Water Board"), and the Executive Officer of the Los Angeles Regional Water Quality Control Board ("L.A. Regional Board") with a Notice of Intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of

the Clean Water Act and the California General Permit No. CAS000001, which is sometimes referred to as the *Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities*, as adopted by the State Water Board via Order No. 97-03-DWQ on April 17, 1997 ("Industrial Storm Water Permit"), relating to discharges of stormwater from Vintage's Rincon Grubb oil and gas field, a 4,236-acre facility (the "Facility") with administrative offices located at 3055 W. Pacific Coast Highway, Ventura, CA 93001.

Subsequently, EDC filed a complaint ("Complaint") against Vintage in the United States District Court, Central District of California, on May 8, 2012 (Civ. Case No. 12-04030 FMO (SSx)), captioned *Environmental Defense Center v. Vintage Production California LLC*, seeking declaratory and injunctive relief, civil penalties and attorneys' fees and costs.

Vintage denies any fault, wrongdoing, or liability regarding all claims and alleged violations.

EDC and Vintage agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

EDC and Vintage stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding EDC's claims or

/ / /

allegations set forth in its Complaint and its 60-Day Notice.

DATED this 2./day of ⊥ ⊥ _ 2013.

| ENVIRONMENTAL DEFENSE CENTER | STOEL RIVES, LLP |
|---|---|
| By: _____<br>Michael R. Lozeau, #142893<br>Attorneys for Plaintiff<br>Environmental Defense Center | By: _____<br>Michael N. Mills, #191762<br>Attorneys for Defendant<br>Vintage Production<br>California LLC |
| ENVIRONMENTAL DEFENSE CENTER | VINTAGE PRODUCTION CALIFORNIA LLC |
| By: _____<br>Brian P. Segee, #2000795<br>Staff Attorney | By:_____<br>Alan E. White<br>General Manager |

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing Stipulation of the Parties. Having considered the Stipulation and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. **Jurisdiction:** This Court has jurisdiction over the Parties and subject matter of this action.

2. **Authority to Execute:** Each signatory for the Parties certifies for that Party that he or she is authorized to enter into the agreements set forth below.

3. **Binding Effect:** This Consent Decree applies to and binds the Parties and their successors and assigns.

4. **Application:** This Consent Decree applies to the operation, oversight, or both by Vintage of its Facility.

5. **Settlement and Dismissal:** This Consent Decree is a full and

allegations set forth in its Complaint and its 60-Day Notice.

DATED this Q\SO day of bn1o\J , 2013.

| ENVIRONMENTAL DEFENSE CENTER | STOEL RIVES, LLP |
|---|---|
| By: -------------------- <br> Michael R. Lozeau, #142893 <br> Attorneys for Plaintiff <br> Environmental Defense Center | By: _____ <br> Michael N. Mills, #191762 <br> Attorneys for Defendant <br> Vintage Production California LLC |
| ENVIRONMENTAL DEFENSE CENTER | VINTAGE PRODUCTION CALIFORNIA LLC |
| By: B_____gee,#2000795 <br> Sta f Attorney | By:_____ Alan E. White <br> General Manager |

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing Stipulation of the Patties. Having considered the Stipulation and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. Jurisdiction: This Court has jurisdiction over the Parties and subject matter of this action.

2. Authority to Execute: Each signatory for the Parties certifies for that Party that he or she is authorized to enter into the agreements set fmih below.

3. Binding Effect: This Consent Decree applies to and binds the Parties and their successors and assigns.

4. Application: This Consent Decree applies to the operation, oversight, or both by Vintage of its Facility.

5. Settlement and Dismissal: This Consent Decree is a full and

allegations set forth in its Complaint and its 60-Day Notice.

DATED this bl\sr day of G.bn>orj , 2013.

| ENVIRONMENTAL DEFENSE CENTER | STOEL RIVES, LLP |
|---|---|
| By: *[signature]*<br>Michael R. Lozeau<br>Attorneys for Plaintiff<br>Environmental Defense Center | By: _____<br>Michael N. Mills, #191762<br>Attorneys for Defendant<br>Vintage Production<br>California LLC |
| ENVIRONMENTAL DEFENSE CENTER | VINTAGE PRODUCTION CALIFORNIA LLC |
| By: *[signature]*<br>B____gee, #2000795<br>Attorney | By: _____<br>Alan E. White<br>General Manager |

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing Stipulation of the Parties. Having considered the Stipulation and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. **Jurisdiction:** This Court has jurisdiction over the Parties and subject matter of this action.

2. **Authority to Execute:** Each signatory for the Parties certifies for that Party that he or she is authorized to enter into the agreements set forth below.

3. **Binding Effect:** This Consent Decree applies to and binds the Parties and their successors and assigns.

4. **Application:** This Consent Decree applies to the operation, oversight, or both by Vintage of its Facility.

5. **Settlement and Dismissal:** This Consent Decree is a full and

CONSENT DECREE -3- 12-Q4030 FMO (SSX)

72S41343.8 0035295.00077

1  allegations set forth in its Complaint and its 60-Day Notice.

2

3  DATED this ___ day of _____, 2013.

4  ENVIRONMENTAL DEFENSE     STOEL RIVES, LLP
5  CENTER

6

7  By: _____     By: _____
       Michael R. Lozeau, #142893      Michael N. Mills, #191762
8      Attorneys for Plaintiff          Attorneys for Defendant
       Environmental Defense Center     Vintage Production
9                                       California LLC

10

11 ENVIRONMENTAL DEFENSE     VINTAGE PRODUCTION
   CENTER                    CALIFORNIA LLC
12

13 By: _____     By: _____ 11
       Brian P. Segee, #2000795        Alan E. White
14     Staff Attorney                  General Manager

15

16                    **II. ORDER AND DECREE**

17      THIS MATTER came before the Court upon the foregoing Stipulation of the

18 Parties. Having considered the Stipulation and the promises set forth below, the

19 Court hereby ORDERS, ADJUDGES, and DECREES as follows:

20      1.    **Jurisdiction:** This Court has jurisdiction over the Parties and subject

21 matter of this action.

22      2.    **Authority to Execute:** Each signatory for the Parties certifies for that

23 Party that he or she is authorized to enter into the agreements set forth below.

24      3.    **Binding Effect:** This Consent Decree applies to and binds the Parties

25 and their successors and assigns.

26      4.    **Application:** This Consent Decree applies to the operation, oversight,

27 or both by Vintage of its Facility.

28      5.    **Settlement and Dismissal:** This Consent Decree is a full and

complete settlement of any and all claims that have been or could have been asserted based on the facts alleged in the Complaint, and all other claims known and unknown existing as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, for violations occurring on or before the date of termination of this Consent Decree. EDC releases these claims and they are hereby dismissed with prejudice. Enforcement of this Decree is EDC's exclusive remedy for any violation of the terms contained herein. It is understood and agreed by the Parties that the released claims include all claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected, and all rights under section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the Release, which if known by him or her must have materially affected his or her settlement with the debtor.

EDC acknowledges that it may hereafter discover facts different from, or in addition to, those which they now know or believe to be true with respect to the released claims, and the Parties agree that this Decree including, without limitation, the releases contained herein, shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

6.  **No Admission:** This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by EDC in this case or of any fact or conclusion of law related to those allegations. It is not evidence of any wrongdoing or misconduct on the part of Vintage.

7.  **Vintage's Obligations:** Vintage agrees to the following terms and conditions in full and complete satisfaction of the claims covered by this Decree:

    a.  **Site Maps:** No later than July 1, 2013, Vintage shall inventory its Facility, so as to prepare topographic site maps that depict the flow of storm water at the Facility ("Site Maps"). The Site Maps shall: i) identify the property

boundaries, areas of industrial activities, landslides, and engineered drainage features; ii) denote the direction of storm water flows; and iii) outline all impervious areas, including roads, buildings, and other roofed structures. Site Maps for roads and production facilities shall denote the direction of storm water flow, Best Management Practices ("BMPs") in place, and locations for additional BMPs. The maps shall be provided in both an electronic format (.pdf) and hard copy.

    b. **Designation of Additional Sampling Locations:** No later than July 1, 2013, Vintage shall expand its storm water sampling to at least eight (8) additional locations, which shall consist of six (6) representative sampling locations from roads and two (2) representative sampling locations from well pads, that also are safe to access for sampling during rain events. Vintage also will continue to conduct storm water sampling at its current locations within Javon, Ice Box, Madriano, Padre Juan, Diablo, and Ampitheatre Canyons.

    c. **Increased Sampling Frequency:** Vintage shall conduct sampling at the above-described sampling locations (see Paragraph 7.b. hereof) during four (4) qualifying storm events under the Industrial Storm Water Permit per rainy season, if there are four (4) such events and Vintage can safely sample the above-described locations. Vintage shall make reasonable efforts to take a sample from each of the sampling locations during a single storm event. If Vintage is unable to obtain samples from all of the sampling locations during a single storm event, Vintage shall take samples during subsequent storm events as necessary to obtain a total of four samples from each sampling location. If four qualifying storm events do not occur prior to March 1, 2014, then, after that date Vintage shall collect the required number of samples for any storm event generating storm water flow at the sampling locations for which less than four samples have been collected, to the extent Vintage can safely sample those locations. If, during any qualifying storm event, Vintage does not collect a sample at any given sampling location due

to safety concerns, Vintage shall include an explanation in its Annual Report consistent with Section B.8.a of the current Industrial Storm Water Permit.

        d.    **Training:** After the entry of this Consent Decree, and within thirty (30) days, Vintage shall provide its existing and new personnel with formal storm water training from a credentialed third-party consultant. This training shall explain the requirements of this Consent Decree, the Facility storm water pollution prevention plan ("SWPPP"), and the Industrial Storm Water Permit. Vintage shall integrate new training requirements resulting from this Consent Decree into the SWPPP, and shall also update the SWPPP to identify those persons or positions responsible for carrying out storm water management, monitoring, sampling, and SWPPP implementation at the Facility.

        e.    **Road Network Storm Water Maintenance Plan:** No later than July 1, 2013, Vintage shall inspect the Facility's road network in order to identify areas of erosion and sedimentation, existing runoff and discharge locations, existing BMPs, and improvements, if any, to BMPs that Vintage determines are necessary to maintain full compliance with the Industrial Storm Water Permit.

        (i)    **Priority Areas:** Vintage shall prioritize review, and, as appropriate, implementation of BMPs at road segments where significant erosion or sedimentation is occurring, or road segments which are at high risk of future erosion.

        (ii)    **Improved Storm Water Management Measures/BMPs:** In selecting BMPs for the road network, Vintage shall utilize applicable referenced documents, including, but not limited to:

> Weaver, W. & Hagans, D. (1994). *Handbook for Forest and Ranch Roads: A Guide for planning, designing, constructing, reconstructing, maintaining and closing wildland roads*. Pacific Watershed Associates. http://www.wildlandscpr.org/files/Part%201%20%20Weaver,%20W.%20E.%20and%20D.%20K.%20Hagans.%201994.%20Handbook%20for%20forest%20and%20ranch%20roads.pdf
>
> State of California Department of Transportation (2003). *Storm Water*

*Quality Handbooks. Construction Site Best Management Practices (BMPs) Manual.*
http://www.dot.ca.gov/hq/construc/stormwater/CSBMPM_303_Final.pdf

In selecting road BMPs, Vintage shall specifically consider the use and effectiveness of culverts, rolling dips, and cross-drains at commonly recommended spacing intervals to route water away from roadways where gully erosion is occurring; use of grade management in roadways to disperse storm water flow (rolling dips, cross drains, and conveyor belt water bars); use of fiber rolls, silt fences, and sand bags on cut slopes; and vegetation management on cut slopes that are prone to erosion.

(iii) **Landslides:** Vintage shall implement stabilization measures for waste dirt and debris on hillsides below post-2006 road cuts to prevent landslides, if any, identified through the Site Map inventory; and, to the extent practicable, establish and maintain vegetation on bare slopes.

(iv) **Abandonment and Revegetation:** By July 1, 2013, Vintage shall identify unpaved roads that it will close, including the locations of such road segments, the planned method of closure, and the timeline for closure. To the extent practicable, Vintage shall close such roads in such a manner that renders the roads hydrologically invisible, *i.e.,* restores background surface hydrology of the area, including revegetation of the roads and related-surface disturbances.

f. **Immediate Storm Water Management Measures at Industrial Sites Other Than Roads:** Vintage shall develop and implement immediate BMPs necessary to comply with any effluent limits in the Industrial Storm Water Permit, which requires that BMPs be developed and implemented to limit pollutant discharge to that attainable with control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT"). Vintage shall implement the following

BMPs in areas across the Facility by July 1, 2013:

    (i) **Drill Sites/Well Pads:** Vintage shall install berms at each new drill site and berms or other appropriate BMPs on disturbed well pads constructed after 2006. Berms should be designed and constructed to impound drainage that would result from a 25-year, 24-hour storm; and construction of gravel buffers/rock baffles and other appropriate BMPs along margins where discharge occurs to reduce mobilization of sediment. Vintage shall evaluate all other well pads at the Facility and inspect each for evidence of erosion to determine whether berms or other appropriate BMPs are necessary and appropriate.

    (ii) **Chemical Containers:** Vintage shall provide secondary containment for all chemical containers.

    (iii) **Production Facilities:** Vintage shall maintain secondary containment for all production facilities.

    g. **Maintenance of BMP Structural Controls:** Vintage shall maintain structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

    h. **Storm Water Pollution Prevention Plan:** Vintage shall prepare an update to its SWPPP on or before October 1, 2013, to incorporate any new information or storm water management measures/BMPs necessary to maintain full compliance with the Industrial Storm Water Permit. Vintage shall provide a courtesy copy of any such draft SWPPP to EDC by August 31, 2013 to provide EDC with an opportunity to review the draft SWPPP and provide comments to Vintage. Vintage will consider any comments provided by EDC and make any additional modifications to the SWPPP, at Vintage's discretion, to maintain full compliance with the Industrial Storm Water Permit.

    i. **Annual Reports:** The Industrial Storm Water Permit requires the filing of annual reports for permitted facilities. Vintage shall provide EDC with a courtesy copy of its annual reports for the Facility, otherwise due on July 1, 2013,

at the time such report is filed with the L.A. Regional Board.

j. **Site Visit/Meeting:** Vintage shall cooperate with EDC and its independent consultant to conduct one (1) interim in-person meeting of the Parties, not to exceed one day in length, to discuss Vintage's efforts to implement the provisions of Paragraph 7 hereof in June or July 2013. Vintage shall further cooperate with EDC and its independent consultant to schedule one (1) final site visit, not to exceed two-days in length, to inspect BMPs and review Vintage's efforts to implement the provisions of Paragraph 7 hereof in June or July 2014. The final site visit will be preceded by an in-person meeting of the Parties to review the status of BMPs and Vintage's efforts to implement them prior to the actual, final site visit. The final site visit will be subject to all Vintage safety protocols for the Facility, and will be at the sole risk of EDC.

k. **Notice at Well Sites Utilizing Hydraulic Fracturing:** In the event Vintage conducts hydraulic fracturing during the term this Consent Decree is effective, Vintage shall provide EDC with ten (10) days' notice prior to conducting such hydraulic fracturing. Along with this notice, Vintage shall identify additional pollutant parameters that it will sample and monitor as part of its storm water sampling protocols at the affected well site in accordance with the provisions of paragraphs 7.b. and 7.c. hereof. These additional pollutant parameters should include chemicals and other hazardous components, if any, likely to be present in the hydraulic fracturing fluids.

8. **Environmental Mitigation Payment/Supplemental Environmental Project:** As mitigation for the violations alleged in EDC's 60-Day Notice and Complaint, Vintage shall pay the sum of $95,700 to the Rose Foundation for Communities and the Environment within thirty (30) days of the entry of this Consent Decree. The designated contact person for the Rose Foundation shall be Tim Little, Executive Director. The purpose of the donation shall be to establish a Northern Ventura County Coastal Watershed Fund. The Rose Foundation will

administer moneys from the Fund for the purpose of funding projects relating to the reduction, prevention, research, or mitigation of discharges of pollutants to coastal watersheds in northern Ventura County. The specific boundaries of coastal watersheds eligible for funding under this Fund shall be Rincon Creek on the north and the Ventura River on the south, and the adjacent coastal waters. Payment will be sent by certified mail to:

> Tim Little
> Rose Foundation for Communities and the Environment
> 6008 College Avenue, Suite 10
> Oakland, CA 94618

9. **Compliance Monitoring Funds:** Vintage shall reimburse EDC for the costs of monitoring the terms of this Consent Decree in the amount of $20,000. Payment shall be made within thirty (30) days after the entry of this Consent Decree.

10. **Reimbursement for Attorneys' Fees, Costs, and Expenses:** Vintage shall reimburse EDC $134,300 to help defray EDC's reasonable attorneys' fees, expert fees, and costs. Vintage shall tender payment to EDC pursuant to Paragraph 18 hereof or as otherwise may be specified by EDC within thirty (30) days of the entry of this Consent Decree.

11. **Force Majeure:** A force majeure event is any event outside the reasonable control of Vintage that causes a delay in performing tasks required by this Decree that cannot be cured by due diligence. Delay in performance of a task required by this Decree caused by a force majeure event is not a failure to comply with the terms of this Decree, provided that Vintage notifies EDC of the event; the steps that Vintage will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

Vintage will notify EDC of the occurrence of a force majeure event as soon

CONSENT DECREE                    -10-                    12-04030 FMO (SSX)
72541343.8 0035295-00077

as reasonably possible but, in any case, no later than fifteen days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

(i) Acts of God, war, insurrection, or civil disturbance;

(ii) Earthquakes, landslides, fire, floods;

(iii) Actions or inactions of third parties over which Vintage has no control;

(iv) Unusually adverse weather conditions;

(v) Restraint by court order or order of public authority;

(vi) Strikes; and

(vii) Litigation, arbitration, or mediation that causes delay.

12. **Continuous Jurisdiction:** This Court retains jurisdiction over this matter until the Consent Decree terminates as set forth in Section 14. While this Decree remains in force, this case may be reopened without a filing fee, so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Decree or to resolve any dispute regarding the terms or conditions of this Decree. In the event that this case is reopened, Vintage does not waive, and reserves all rights to assert, any defense it may have at law or in equity that it otherwise may have to EDC's claims for relief. Except as provided otherwise herein, in the event of a dispute regarding implementation of, or compliance with, this Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within 30 days after notice of a request for such a meeting to the other Party and its counsel of record. If no resolution is reached at that meeting, either Party may file a motion with this Court to resolve the dispute.

13. **Review by the United States:** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a Party prior to 45 days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the EPA. Therefore, within three (3) business days of the signing of this Consent Decree by the Parties, EDC shall serve copies of it upon the Administrator of the EPA and the U.S. Attorney General.

14. **Termination:** This Consent Decree shall take effect upon entry by the Court. It terminates eighteen (18) months after that date. In addition, following the date of termination of this Decree, this Court shall retain jurisdiction for the purposes of enforcing this Decree solely as to: (a) any request for enforcement of this Decree pending before the Court on the date of termination, and (b) any dispute regarding the enforcement of this Decree that arises prior to the date of termination, but only to the extent the dispute either (i) could not reasonably have been brought before the Court prior to the date of termination, or (ii) the parties agree in writing that the dispute may be resolved by the Court after the date of termination.

15. **Joint Drafting:** Both Parties have participated in drafting this Consent Decree.

16. **Amendments:** This Consent Decree may be modified only upon the approval of the Court.

17. **Objections by the Court:** If, for any reason, the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

18. **Notifications:** Notifications required by this Consent Decree must be in writing. The sending Party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt

requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) e-mail, provided that receipt of the email content can be confirmed by the sender, with time of receipt being the uniform time the email enters the information processing system that the recipient has designated or uses for the purpose of receiving email.  For a notice or other communication regarding this Decree to be valid, it must be delivered to the receiving Party at one or more addresses listed below or to any other address designated by the receiving Party in a notice in accordance with this Paragraph 18.

**if to EDC:**
Brian Segee
Environmental Defense Center
906 Garden Street
Santa Barbara, CA  93101
bsegee@environmentaldefensecenter.org

**if to Vintage:**
Legal Manager
Vintage Production California LLC
9600 Ming Ave., Suite 300
Bakersfield, CA 93311

with a copy to:
Elliott Heide
Assistant General Counsel
Occidental Petroleum Corporation
10889 Wilshire Blvd.
Los Angeles, CA 90024
elliott_heide@oxy.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day the notice will be deemed received at 9:00 a.m. on the next business day.  A notice or other communication will be deemed to have been received:  (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving Party rejects or otherwise refuses to accept it, or if it cannot be delivered

because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver.

IT IS SO ORDERED.

DATED: May 13, 2013

/s/
HON. FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE